All right, we'll call our case for the afternoon, United States v. Rubin-Mitchell. May it please the Court, Laura Irwin from the U.S. Attorney's Office in the Western District of Pennsylvania, on behalf of the government. With the Court's approval, I would like to reserve three minutes for rebuttal. All right, that's fine, and we're going to put you on the clock, so to speak, but this is an important case, and we don't want to rush it, so don't feel too constrained for time. We'll probably add a little bit at the end if we need it. Thank you very much. Your Honors, in this case, the District Court held that the taking of a DNA sample from an individual who had been indicted, arrested, and detained pretrial violated the Fourth Amendment. The government believes that that decision is incorrect. The District Court did identify the proper test to be applied, and that's the totality of the circumstances. Oh, let's back up a little bit. We need jurisdiction over this appeal. That's correct. You did not address at all in your briefing the Criminal Appeals Act. It contains specific matters that are appealable from a criminal case, and this is not one of them. There is the collateral order doctrine, which, under Carroll, the Supreme Court has construed rather narrowly, as have we. How can we entertain this appeal? We believe, Your Honor, as stated in our brief, that it does fall within the collateral order doctrine. Clearly, we believe that there has been a definitive decision made on this issue. The District Court was offered the opportunity on reconsideration, told us firmly that the answer was that we were not going to get full reconsideration to the effect of changing his decision. But that's not the test. This is definitely an interlocutory order, is it not? We agree that it is, but we believe that it falls squarely under the collateral order doctrine because of the three tests that Cullen and Coopers and Librand require this Court to analyze, and we believe we've met all three. Are you ready to assure this Court that if a DNA test is taken here, that it would in no way be used in connection with the prosecution of Mr. Mitchell? That's my understanding, Your Honor. From the trial assistant in this case, DNA evidence is not at issue in this case. Well, it may not be at issue, but if you find DNA, you might then proceed to try to make some kind of a connection. Well, to the extent the defendant would refuse to admit that he's the one at issue and that we needed to identify him, that's the only means it could be used for. But I don't believe that's at issue in this case. I don't believe there's been any DNA recovery in this case. Are you just waiting until the trial plays out, and if he's convicted, you can get a DNA sample then? Well, that's the argument that the defendant makes in this case against application of the collateral order doctrine, and there's two problems with that. One is that Congress has told us, has directed us to collect DNA evidence pre-trial. So we have a statutory obligation that we need to fulfill. And second is there is an injury that would be sustained in the timing is important of the collection of the DNA and evidence. As we explained in our brief, the time that it can take to accomplish a conviction delays possible resolution of other criminal offenses that may be out there that we could link this defendant to through identification through his DNA. But wouldn't the district court's decision be reviewable at the end of the case on appeal? Well, we tried to analyze that, Your Honor, and we couldn't find a way that it would be. If, you know, if he's convicted, we still get to take his DNA. You know, under Shubelek, we clearly can take his DNA after conviction. We weren't sure how. So you say the issue was moot in that event? Exactly. And if he's acquitted, of course, then we can't take his DNA either way. Well, isn't the fact that if he's acquitted, he can get the previously taken DNA, is it thrown out or thrown away or given back or destroyed? It's expunged. There is the expungement provision that is available to an individual who is acquitted. Isn't that an acknowledgment that the keeping and the having of this DNA, a precondition of it, really is a finding of guilt? I'm not sure I understand your question. That keeping it, having it... It would seem to me logical that if you can take it upon his arrest, you get it upon his arrest. And that's fine. And you can do whatever you want with it. If he's found not guilty, if the fact that you took it at arrest and the government's interest is all that matters, and you've done that, why should you have to give it back later if he's acquitted if guilt or innocence really isn't the issue? Well, the issue is identification. At the point of arrest, he's still going to have his fingerprints taken and his photograph taken. So unless... There's no argument by anyone in this case that taking and keeping the fingerprints and the photograph somehow are evidence of his guilt. But do we throw out the fingerprints later on? No, we don't. He can move to have those expunged just as he could move to have his DNA expunged. If DNA is expunged upon a favorable outcome, and you can get in any way if he is convicted, what's the point of the statute? What purpose does that serve? Because as explained in our brief, Your Honor, it allows the government to do a number of things. And I think this... We're bleeding over into the merits, and I don't mean to do that unless we're ready to go there. But I think it's because the government, once there's been a probable cause determination that someone has been arrested, the government has a keen interest in identifying that individual. We do it through fingerprints. We do it through photographs. This is another measure of identification that allows us to ensure that we have the correct individual. Well, you're not saying identification. You're saying linking him to crime. Identification is satisfied by fingerprints. The real idea of the DNA is linking him to other offenses or exculpating others. With all due respect, Your Honor, the primary purpose of taking his DNA is identification. It is identification because there may not always be fingerprints. There may be other biometric information that can show us who he is. It's exclusively identification when you understand how the DNA Act works. When you understand that what's taken and analyzed... The fingerprint itself is the 13 core loci that are unique to an individual. All right. Well, then why don't we construe the statute to say that this is required when there are no fingerprints available? You can't identify him by means of fingerprints, and you need a means of identification. Because the Supreme Court has never directed that the government may only use one means of identification or the least intrusive means or the more preferable. No, but you need to mount... You have an expectation of privacy on his side. You need to mount an argument on the government's side that this is really, really necessary. I mean, in all the cases where these types of situations where we allow, notwithstanding the reasonable expectation of privacy of the defendant, is where there's some real urgency. The body cavity search or the prison cell. There has to be something that's extremely important. Are you saying this is that important? Well, two responses. First is, in Shibelik, this court recognized that DNA is a legitimate government interest, a government purpose of identifying an individual. It's the most accurate means possible. The other very important starting point that I think we need to think about and where the district court made its first mistake was failure to recognize what the precise privacy interest is in this case and how it's affected by the arrest. Wait a minute, but the point was why do you need all three? If you've got a photograph, you've got fingerprints, why do you then have to use DNA as well? Your Honor, it's because this is the most accurate form of identification. But it's not replacing fingerprints or photographs. You want it as well as. That's right, because there could be instances in which fingerprints are not left, but other biometric information is left. There could be instances, you know, some people, it's rare, but some people don't leave fingerprints because they have, you know, sores or calluses on their hands. I mean, it's another tool. It's not limited to those situations. No, it's not, Your Honor, because we can't foresee what they are. But that doesn't prohibit the government from using a new means to do something else, which is identify. It's the same thing that a fingerprint and a photograph do. And if you look at the expectation of privacy, what that interest is in this particular case, once someone is arrested upon probable cause, the privacy interest we are concerned with is in his identity. Once he's at that point of probable cause and arrest, he has an extremely diminished expectation of privacy in his identity, and the government has every interest in knowing with certainty who they have under arrest. Is that all the information is yielding? Take a look at the rationale of the district court in excluding DNA or finding the statute unconstitutional. DNA samples may be real private information regarding familial lineage and predisposition to over 4,000 types of genetic conditions and diseases. They may also identify genetic markers for traits, including aggression, sexual orientation, substance addiction, and criminal tendencies. That's his reason for finding a privacy intrusion that outweighed the government's interest. Why is that wrong? Because he's actually incorrect as a matter of law, Your Honor. The statute does not allow the DNA fingerprint that's sent off to CODIS to contain that information. The CODIS fingerprint, the 13-core loci, it's like a barcode. It's alphanumeric. If you or I were to look at that right now, it would have no meaning to us because we're not scientists and we can't discern it. That information, those 13-core loci, don't tell you traits, don't tell you predisposition. Well, they don't yet. They don't yet. The science isn't there yet. But what if it changes? And what if we can in 10 years? Well, Your Honor, several responses. One is that's not this case. And the second is I think we have to have confidence, given the platform that Congress has put out with the DNA Act. That's not this case, but that's exactly what the district court was worried about in terms of privacy intrusion. And I think that those are valid things that we should be concerned about, but they're not going to happen in this case. And when that case does arise- We don't know that. We don't know that this DNA that's taken tomorrow, let's say we would reverse and rule in your favor, and his DNA is taken tomorrow. And it's going to be there. That's correct. His DNA sample would be there. But under the law, it would be, individuals would be violating the law if they did any more than take the 13-core loci out. And, well, individually violating the law if they take certain privacy, hospital privacy information, but we make sure that those kinds of things are respected. And they're respected because they're in the statute. The statute says you will not do anything other than this. The statute requires that if there's anything other than the 13-core loci to be taken out, that the Department of Justice must go to both houses, Senate Judiciary Committees to explain to them with adequate notice as to why we want to change the 13-core loci. Understand that when that information is analyzed, you get this printout that's alphanumeric. There's no name on it. There's no blonde hair, blue eyes. It's information that we would not be able to understand. It's identified by an identifier. This is sample 1, 2, 3. It came from the Western District of Pennsylvania. It was collected by this individual. Other than your assurances, is there any other safeguard by which we would know, we would be very confident about that this is only going to be used for identification purposes? Well, I think we can feel confident because Congress has directed it. They've required that there would be criminal consequences if someone violates it. And I mean, I certainly can only speak for myself that I adhere to the law, but I think we have to have a fair expectation that that's what all the agents do and the technicians with any type of evidence. I mean, there's a risk of evidence tampering. And in any event, once you get it, if that person is convicted, it stays in a database forever. That's correct, Your Honor. The 13 core loci stay in the database forever. And that leads me to a second point that I think is very instructive is to how this primarily is an identification tool. When a hit is made, I think there's this perception that a hit equals conviction. What's a hit? A hit is when we find a match between, let's say... Let's add 10 minutes, please, to the time. Thank you, Your Honor. A hit is when we have a match between crime scene DNA and our individual defendant. That's not what happens. What happens is that hit is sent back to the district that generated the sample. And the FBI, and I have verified this within the Western District, and I believe it to be true throughout the country, but what happens is that hit is taken and the agents go and get an affidavit, prepare an affidavit of probable cause and present it to a magistrate to get another sample to verify that that sample is the correct one. But whatever you're saying here isn't part of our record, unfortunately. Let me ask a question about your expectation of privacy and your identity. But we've got two searches here. We have a bodily intrusion, essentially. That's correct. And then a search of the DNA after that. That's correct. And while you may have privacy in your quote-unquote identity, it isn't the real issue whether you have a reasonable expectation of privacy in your bodily integrity? Well, the district court found, correctly. Once you say there's a reason the government needs it because they need identification, are you saying they can break, you know, if you're arrested, they can go into your house to find identification of you without warrant? No, we're not saying that at all, Your Honor. Well, it's the same thing. We're talking about, in that instance, there would be the expectation of privacy in your home as well as your identity would add another layer to it. Well, here you have it in your body. That's correct. What's more sacrosanct than that? Well, the district court correctly found that it's a minimal intrusion to take a swab from the mouth. But it is an intrusion. And that's true. So the expectation of privacy is not really in your identity. The expectation is in your bodily integrity, like the privacy of your home. So I think that's a little bit... Well, in Chevelleff, this court found that even a blood draw would be a minimal intrusion. Well, but that was a different case. That's after conviction. Let me ask another question. The threshold issue, I know we diverted from that, but how do you fulfill the requirements under Carroll that this is something that should be appealed on an interlocutory basis, under Carroll and Cohen? I think that we've established that in our brief, Your Honor. We showed that we have a decision that's definitively been made by the district court. There's a question of clear constitutional importance that's been finally decided that doesn't involve the merits. I mean, the defendant has admitted both the first and second elements of the Cohen test in their opposition to the motion to expedite. They agreed that there was a conclusive determination of the issue. They agreed that the decision was effectively unreviewable upon appeal from a final judgment. I'm bothered by the merits, though. The fact that the DNA really relates to linking him to crime, which could include this crime. It's not something like bail or something that's so remote from guilt or innocence. In this particular case, however, there's going to be no link between those. There's no DNA evidence at the crime scene. If you thought. I don't know that that's in the record. If you thought that it could link him to a crime, then you would be required to get a warrant, wouldn't you? I think that's correct, Your Honor. Can we go back to the jurisdictional question for just a second? I'm sorry. No, go ahead. That's where we are. In the three circuits that have accepted this proposition that the government can use the collateral order doctrine, don't they require something more than the standards and the collateral order? Aren't there other considerations, like in the McVeigh case that says there are concerns unaddressed by Cohen that come into play here when the government is the one taking the appeal? Well, that seems to be the defendant's argument that there is a difference when the government is bringing the appeal. I can appreciate that there might be a distinction, but I don't know that there's one that means that the government can't appeal in this case or in any case. I'm not saying that that means the government can't appeal, but I think what I'm saying is that those circuits that have said that the government has this ability have required something more. And in the cases where they have actually granted the appeal, those occurred after the trial was over and the defendant had been sentenced, didn't they? I'm not sure exactly. Horn and Massawi were the other two cases, the first and fourth circuit. What's your best case for the proposition? I mean, I think we all start, and our case law starts from the proposition. I think maybe it was Douglas, that we have a criminal appeals act. We have a statute that says, and lots of these can all be appealed by the government, which gives the implication that others cannot. A few situations where we found an appeal can be taken is where there's something really essential and that's going to be, you know, run roughshod or irretrievably lost, or it's really not interlocutory. This is a case in which something would be irretrievably lost. The Congress has told the FBI and the other federal agencies to take DNA pre-trial. If we don't do that, the opportunity is irretrievably lost. And we went through the various permutations of how this type of issue could get back up before the court. The only way we could figure it out is if the defendant lost before the district court and they took an appeal and interlocutory repeal was granted in that case. So the analysis we came to is it would have to be interlocutory at some point. And the government- Another judge in the Western District could decide it differently and it could go up because this is not a binding ruling by any means. It's a technical matter. I agree, Your Honor. But recall that in the Wecht case, this court instructed that the collateral order doctrine should be applied pragmatically and not technically. And I think that's a keen distinction to make in this case because it's a practical matter. No one in the Western District is going to disagree with Judge Sircone. And it's a practical matter. The collection of DNA pre-trial has stopped within the Western District. But in the Wecht matter, it was something- that was the defense, was it not? It was a defense. You know, when it's a criminal defendant and whether continuing without an opinion on a matter is going to run roughshod over a defendant's rights, that's a different matter. And it seems that that's the context in which these appeals have been allowed when to not do it is something that, by virtue of not doing it, you're going to obliterate a very, very important right. And here you argue the DNA right, you know, is an important right. I'm just not sure if it rises to that level. I appreciate the distinction you're drawing, and it clearly is one that is out there. But I cannot understand how it is that the government can't have an equal right. I mean, I'm- No, I don't think the government does get an equal right. I mean, it depends on the issue. What's your best case for the proposition that this should be permitted? I think the case is cited in our brief, which would be Cohen and Coopers and Librand that set out the doctrine and explain how it applies. I'm sorry, could you back up and say those cases again? Cohen and Coopers and Librand. They're cited in our brief. But they're not criminal cases. That's true, Your Honor. What's your best criminal case? Well, probably United States versus Grape and United States versus Sal. But Sal involved a defense, they were about to take the blood over the defense's protest. So with that, there again, the right was going to be run roughshod over the integrity, the bodily integrity. I realize that distinction. But I think the same thing can be said about there shouldn't be the opportunity to essentially obliterate the government's obligation as dictated by Congress to take these steps that the Congress has determined and this court has found to have a crime-solving identification and crime-solving purposes. What interest does the government have in DNA that is not satisfied by fingerprint and photograph? It's more accurate, Your Honor. And it's available in situations where those other things are not available. Like what? Instances in which biometric information may be left behind, but fingerprints may not be. Now, the presumption of innocence falls by the wayside? I believe it does, Your Honor. I think that that was an inappropriate reliance by the district court as described. Why is it inappropriate? Because in Bell v. Woolfish, the Supreme Court instructed that it's not, the presumption of innocence does not play into these pretrial interests. It's an allocation of burden and the burden the government must meet to prove a conviction. Do you contend that there is a reduced expectation of privacy based upon an arrest? Yes, we do, Your Honor. I believe it's essentially on all fours with someone like Shubelek, who is in the criminal justice system. Once... He was convicted. That's true, Your Honor. But it's the identity, his interest in his identity. Once the government has had an arrest upon probable cause, the government has every interest in knowing the identity of the person that they have arrested. And can go through home, belongings, car, body, anything to find identity? No, that's not this case. This case is simply taking a DNA swab and generating the 13-core loci. I don't see anything in the principle of this case that transfers to the privacy interest that's outside of identity within the body, within the person. Is this like a body cavity search? Well, to the extent that you open your mouth, but I don't believe that it's, you know, is drastic as the one that was addressed in Belle v. Wolfe. I mean, I think that even the defendant agrees that it's a minimal intrusion. Not knowing too much about DNA, what assurance do we have that it's only that junk DNA that's going to be tested and stored as opposed to the rest of the DNA matter? The assurance we have, Your Honor, is that's what Congress has directed the FBI to do. That's what Congress has directed that it would happen. It's only limited to these 13-core loci. If it's going to be any different, it has to go through both houses of Congress. Judge Kugler had made a point that maybe technology will develop in a way that will allow junk DNA to be assessed for other factors other than identity? And that's a possibility. But keep in mind, there's possibilities that there could be other methods of identification in criminal forensics that we may never even have considered. But the point is that you would be storing information that might yield more than the statute allows. But we would only be able to look at it if Congress allowed us to look at it. Does the statute say that? Yes, it does. It says that if there's going to be a change in the analysis outside of the 13-core loci, the department must go to both houses' judiciary committees for approval. I see my time is up. It's been extended, so I don't want to overstay my welcome. One last question. You are not urging special needs exception, is that correct? That's correct, Your Honor. Thank you. All right. We'll hear from you on rebuttal. May it please the Court. My name is Elisa Long. I'm an assistant federal defender. At council table is Tara Allen, also an assistant federal defender. If you could lift the microphone a little bit. I'm sorry. We represent Mr. Mitchell in this appeal. I want to address first the issue of jurisdiction. If the court were to assume jurisdiction over this appeal, this would be a break from the types of appeals over which this court has assumed collateral jurisdiction in the past. The government, in its brief, and again before this court, the best analogy, or the closest case they can come up with, is Sell and Grape. These are cases involving If this case cannot be considered now, at this point, if the constitutionality of the statute cannot be assessed now, when can it be assessed? It could be assessed when you have the defendant's right at stake, where you have a defendant appealing to the court. Why would a defendant appeal to the court? That's what the defendant is doing now at this time. The government is appealing. Oh, that's right. I'll stand corrected. But when would the defendant appeal? The defendant could appeal if there was, if the court were to order that the government could collect Mr. Mitchell's DNA. If it went the other way, in other words. If another court, if another judge in the Western District says it's constitutional. That's correct. And that is more akin to the government, the cases that the government relies upon, which Grape and Sell, where there is going to be an irreparable harm should the case, should the court not assume jurisdiction over the case. Here, as Your Honors pointed out, the government is going to get its DNA sample if there is a conviction in this case. But the case, but the opportunity to get it in the meantime is lost. That's true. But that does not rise to the level of an important issue over which this court should assume collateral jurisdiction. Congress thought it was pretty important because they stipulated it be done now. Well, Congress gave the government, the Attorney General, permission to take DNA. The Attorney General then promulgated regulations requiring federal agencies to take the DNA. Upon arrest. Upon arrest. And the statute says it is a crime for someone to refuse. That's correct. To permit their DNA. So that's pretty strong. That's correct. It is, it's an important, right, but not important. It's an important interest that the government has, but it's not important in the collateral appeal doctrine sense. How do we know that? What, what's your best case that says that? I mean, you say irreparable harm, but irreparable harm really isn't in the case law. They talk about important right. What is your best case or what case supports the proposition that this is not the kind of important right that should be permitted to be appealed from an interlocutory standpoint? Well, I think that the language is not perhaps irreparable harm. It's imperiled interest. Whether the government or a party's right interest would be imperiled if the court were not to assume jurisdiction. The cases where, I think there isn't a case that's directly on point here. The cases where the, this court has assumed jurisdiction over government appeals under the collateral order doctrine. Those are issues where prosecution will be stopped altogether if the court did not assume collateral jurisdiction or interlocutory jurisdiction. That's very different from this case here. This appeal will go, I mean, this case will go forward whether or not the government gets the DNA now or at some later point or was never entitled to the DNA to begin with and that it will be expunged from the database. Which of the co-factors do you disagree with? I mean, you do agree that there has been a conclusive determination. We do agree that there's been a conclusive determination but it's not the broad issue that the government paints it as. It is an issue as to whether or not the government can take Mr. Mitchell's DNA at this point in time prior to trial while he is awaiting trial in a detention facility. That's the narrow issue that the district court decided. It has been decided. How about the not reviewable on appeal? The government, it would be difficult for the government to vindicate this interest in this particular case. However, the fact that the government has suffered an adverse ruling doesn't automatically give it a right to appeal on an interlocutory basis. The courts have recognized that the Third Circuit has recognized that. That even if you cannot vindicate an interest or even if you cannot vindicate that right or bring that right before the appellate court at the conclusion of the case, it doesn't mean that an interlocutory appeal is appropriate. You still have to satisfy the other prongs of the test. And I think our strongest, where the government falls short is the importance. You don't disagree that this issue is totally separate from the merits of the case? Well, as we argue in our brief, all we have is the government's assurance that if the DNA sample is taken and if the DNA sample comes back. It's just for identification purposes. It has nothing to do with the underlying case, which has to do with a drug possession. The argument that the government is making suggests that this is not at all about identification. It is about investigation of other crimes. The fact that the government does not need Mr. Mitchell's DNA to identify him, they are satisfied that they have arrested the person that they believe perpetrated the crime. They don't need his DNA to establish that. So it's clear that it is, the government continues to use or to brand this as identification, but it is not. But you're focusing solely on your client, but as a matter of practice under the statute, the question is, isn't the government authorized to take DNA pursuant to congressional will? Four persons arrested for offenses. The statute authorizes that, but the Fourth Amendment prohibits it. You don't agree that there is a diminished loss of privacy once you're arrested? As a trial detainee, he has a diminished expectation of privacy. However, the cases that discuss that are cases like Bell v. Wolfish, cases that go to penological interest, meaning that the government can intrude upon your privacy rights while you're detained in a facility for purposes of running the prison safely, for administrative purposes. They can record phone calls. They can search you after you visit with a family member to make sure that you're not engaging in criminal conduct, that you're not bringing contraband into the jail. I mean, there are other reasons. Those reasons are absent here. A non-convicted pretrial detainee suffers the same loss of privacy, doesn't he? Yes, while they're in a prison setting, the courts have held that searches can be done without reasonable suspicion. Calls can be recorded. It's a practical matter they're treated no differently than someone who's been convicted, correct? Well, with respect to running the prison, yes. But the searches that are permitted are go to furthering the security of the prison. No, I understand that. That's not what this is. They're not going to use the DNA analysis or the results to make the prison more secure. Well, I think we're talking about, though, the privacy interests of your client. Now, when someone is arrested on a federal felony, they go before a judge. A couple of things can happen with regard to bail. In over 50% of the cases, they're detained without bail. They end up in a prison just like someone convicted, correct? Yes. And in those other cases where they're released on bail with conditions, the conditions can be as onerous as someone who's been convicted and placed on probation. Isn't that correct? That's correct. And they usually are. We can involuntarily require that they submit the drug test, involuntarily submit to drug treatment. We can regulate who they associate with. We can require that they notify their employers. There's all kinds of pretrial conditions, bail conditions that are put on people who are not convicted that are essentially no different than someone who is convicted and put on probation. Isn't that true? It's true, but the one distinction is that when you're placed on bond in the federal system, you must agree to those conditions. But if you don't agree, you're going to go to jail. That's correct. So who doesn't agree? Your clients are going to agree, aren't they? Well, Mr. Mitchell's held without bond, so he's in a different situation. So when we're talking about the privacy interests of someone arrested on a federal felony compared to someone who has been convicted for which the Third Circuit already has a precedent, there isn't a whole lot of difference, is there? There is. What is it? The difference is that what the government is seeking to do here is to take Mr. Mitchell's DNA for purposes of solving other crimes, investigating other crimes outside of the crime for which Mr. Mitchell is incarcerated. They're not permitted. No court has held that or the Supreme Court certainly has not held that that type of search without a warrant, without reasonable suspicion or probable cause, is permitted. I didn't get the impression that that's the purpose. That doesn't sound like the purpose that they stated. The purpose that they state is identification. They want to be sure that they've got the right person. They want to make sure that a person who may not be guilty is exonerated. They want to be sure that they can get prior records for purposes of bail release or sentencing, etc. It's not the purpose. I didn't get the impression they state the purpose is to solve other crimes. The stated purpose is... Or at least not the primary purpose. The stated purpose is identification and what this court should look at is what does that really mean? Does it mean identifying is this person who we think he is? What's wrong with that? That sounds like a good thing. It's fine. That's not the issue. The DNA, the fingerprints are used to determine that. The name, the driver's license, the other information that they obtain... You don't always have that. That's correct, but they always take fingerprints. They always take photographs. There's a name given, but what they're asking or what the government is looking to do here is something well beyond that. It's not about identifying Mr. Mitchell as Mr. Mitchell or the person they believe perpetrated this crime. Is it more intrusive than getting a fingerprint? It is. It's much more intrusive. Why so? You can get a cheek swab or a finger prick. You can do it very easily. It can be done easily, but it's still an invasion of your bodily integrity. Opening up your mouth and having a law enforcement officer insert a swab for 30 seconds and rub it around your mouth is a significant... It is a bodily intrusion. It is something very different than pressing your fingers on a piece of paper. Having blood drawn, bodily tissue and fluid taken from beneath the skin is a very different type of intrusion. Is that intrusion outweighed by the government's interest in precise identification techniques? They're not seeking that information for purposes of identification. They're seeking it for purposes of solving other crimes, for investigating other crimes. To link him to other crimes, not to just identify him? By virtue of the fact that the government is bringing this collateral... Isn't that the purpose of fingerprinting? The purpose of fingerprinting is to identify the person. But you can solve other crimes. You can solve past crimes. You can even solve future crimes by simply having a database of fingerprints. Isn't that what law enforcement does all the time? That's a separate... The cases that discuss, first of all, whether or not fingerprinting is actually a search in the sense that a bodily intrusion, a swab or a test is a search is very different. They're very different types of searches. The degree of intrusion is very different. But the government uses fingerprints to identify people and to pull up a prior record, perhaps. And that's something very different than investigating unsolved crimes. To the extent that the government may, which is outside the record, do that on a case, that's not the primary purpose. And that's not sort of the sanctioned purpose. You're not suggesting that it's a bad thing to solve past crimes or old crimes? No, the government has an interest in solving past crimes, certainly. But the court has to consider, can they take someone's DNA upon arrest when there is no reasonable suspicion to believe that they committed any other crime? If they had that, if they had probable cause or reasonable suspicion, they could get a warrant and then properly conduct the search. Getting back to what Judge Kugler asked you about conditions being imposed on detainees, why is this any different from those conditions? In other words, we impose a drug testing condition, we impose other conditions, your cell is searched, you must submit to, again, the drug testing, you must submit to DNA testing. Why is this not just exactly like every other bail condition? Well, not bail condition, but detention condition. I'm asking you to compare it to someone who's... I guess it would be bail condition. Okay. One thing I didn't mention is that when you put someone back into the community, you have other concerns. Mr. Mitchell's not back in the community, he's in an institution. When you put someone into the community, you have concerns about the safety of the community, the other people in the community. You have concerns about the person who's out on bail not being where they're supposed to be, not appearing in court, not staying within the restricted areas. It's also the protection of the public under the Bail Reform Act. That's why some of these conditions are imposed, to protect the public, even though they haven't been convicted of anything yet. That's correct. Is it of any consequence to you that before the blood sample is yielded or DNA is yielded, that there is a probable cause determination? The probable cause determination is... There was one in your case, because he had been indicted. Yes, he had been indicted. Ten more minutes on, please. He had been indicted by the grand jury. A probable cause finding, as I argued in the district court below, that it's not a difficult standard to meet. It's not a rigorous standard. It's caused to believe that a crime was committed and this person committed the crime. That's correct, but it's not even remotely close to beyond a reasonable doubt to... No, but I mean for purposes of taking a sample, a DNA exam through blood or saliva, doesn't that satisfy any question about guilt or innocence or presumption of innocence? No, I think what we're trying to figure out is when a court has made or a jury has made, a grand jury has made a determination of probable cause, does that make the expectation of privacy like someone who's already been convicted or as significant... as reduced to someone who has already been convicted? And it does not. It does not come close to that. One, because of the mechanism in which or the ease with which grand juries return indictments. It's not a rigorous standard. There's no adversarial process there. It's not an event that is accorded the same type of... Your view is that the government has no interest in a pre-conviction DNA sample. The government does not have an interest that's sanctioned by the Fourth Amendment. They have an interest in prosecuting crimes and investigating crimes. Whether or not they can do that for people who have been only arrested or only detained and only been a probable cause finding, that doesn't... Their privacy interest... The privacy interest trumps the governmental. Yes, the governmental interest, particularly when you unpack the meaning of identification and see what the government... Truly, in Mr. Mitchell's case, they've already said we're not interested in his DNA for purposes of this trial. We don't need the DNA for purposes of identifying him as the perpetrator of this crime. By virtue of being before this court, asking for collateral order jurisdiction or review, they've admitted that. So this is not about his identity. It's about other crimes that may be out there that may have occurred in the past and linking him to those. But doesn't the government have an interest? Just like the government has an interest in knowing if someone who's out on bail is using drugs to protect the public. Doesn't the government have an interest in knowing whether this person has committed other crimes and linking him to other crimes so that they can protect the community even more? Isn't that aligned with the same kind of interest? He's not in the community. He is in an institution. Well, but let's say he's arrested and upon the condition of his being arrested, they want to take DNA. And he might be released on bail. And therefore, take the DNA because he would be, it would be a protection. Just because he's in prison doesn't mean we can't protect the public by using his DNA to link him to some other crimes, which might result in keeping him in jail longer, which would protect the public more. Aren't they kind of the same thing? If they're different, let me think about how I can explain it. When someone is out on bail and they impose a condition of DNA testing or their look, let me go back to Shubilek, the case in the Third Circuit. The justification for that type of invasion of Mr. Shubilek's privacy was protection of the community, was as a convicted person, they had a interest in rehabilitating him. He had a higher chance of being released. He had a higher likelihood of recidivating. Once you're convicted, you have a reasonable expectation of privacy is definitely diminished. I mean, that's, in my mind, a very clear difference. But here, if you're arguing that it isn't that much diminished, but you need to trump, I mean, you need to have a government interest. It seems like the government interest really is there. The government interest isn't there. Shubilek, one of the government interests that was considered, and factored in, was deterrence, rehabilitation. Mr. Mitchell has not been convicted. There is no interest in- On that same point, we said in Shubilek, a DNA database promotes increased accuracy in the investigation and prosecution of criminal cases. That's precisely the point, I think, Judge Rendell's making. Yes, and doesn't that protect the public? So isn't that permissible to trump a reasonable expectation of privacy? No, not for someone who has not been convicted and is not on supervised release. For someone who has only been charged and a probable cause finding has been made, it doesn't trump their privacy interest in the way that it does. And it doesn't, the government interest- Is it really that much of an intrusion in privacy interest? Are you talking about a blood sample? It's not. Yes, I do believe that the taking of the sample is- Is it the physical act,  Is it the physical act of yielding blood, or is it simply because it's- I'm not sure I follow. What is the intrusion? Two different searches that occur. I mean, we all have, babies give blood, I think. You know, we all do. It's a very commonplace, minimal thing nowadays. But babies give blood, adults give blood in a medical setting with a trusted provider, with appropriate precautions. We're not in a prison setting- It just doesn't seem like it's that big a deal. I mean, we all, you go to a doctor's office, they want a blood sample to see if you're okay. It just doesn't seem like that big of an intrusion. I think it's different when- It's rather commonplace, isn't it? It's commonplace outside of, for people who are not in the criminal justice system. But because it's so commonplace, doesn't that affect our reasonable expectation of privacy, which is the cornerstone of the Fourth Amendment? As I understand your argument, we all have this expectation of privacy in our own unique DNA, correct? Yes. And isn't it true that every state in this country tests every newborn baby for DNA, for genetic diseases? I'm not sure if it's every state, but I do know that that's not- And most of them do it without even asking the consent of the parents. So what is the society's, now, expectation of privacy in their DNA if we take it from everybody when they're born? We don't turn it over to law enforcement for purposes of investigating crimes. What would stop law enforcement from getting it, though? They could issue a grand jury subpoena, couldn't they? I don't, that's outside, I haven't thought of, that's outside the scope of this case. But I think if the blood is given for purposes of medical testing and consent is given by the parents in a medical facility, that's very different than- You don't always ask for consent. Not every state requires consent. They do it without consent. Mind-boggling to some, but- I think it's different than turning it over, like the Supreme Court's case in Ferguson, where they tested pregnant women who were in the hospital. And they were turning over, they had a policy of turning over the results of the test to law enforcement for purposes of identifying, as the government tried to argue, mothers who were, expectant mothers who were drug users. The Supreme Court found that that was not appropriate. So in the analogy that you are, or the situation that you're suggesting, wouldn't be permissible under current Supreme Court law. I do want to- One other issue that I have is the- It's not just the search, the initial intrusion, the taking of the- It's also what happens to this DNA sample when it's analyzed and then remains in the database in perpetuity. It is searched repeatedly, over and over again, to determine if there's any link to any open cases, if there's a match. And I think, as Judge Kugler, you said the technology is emerging. It's developing rapidly. There's more and more that you can do and that you can discover with DNA. The government coming and saying, trust us, we're only going to do this one type of testing on the junk DNA of the 13 loci right now. Well, I think Congress seemed to be so concerned about improper disclosure that they set out criminal penalties for improper use. Aren't the safeguards contained in the statute sufficient? No, because they could be, well, first, because they don't go to the initial bodily intrusion. They do nothing to mitigate the initial search or the initial intrusion. But secondly, they don't, they don't, to the extent that they're not statutory, they're regulatory, primarily. They're regulations that are promulgated. And I think contrary to what the government said, in order to change the type of analysis that is done, the Department of Justice only needs to give notice. It doesn't have to ask permission. It's not that the Congress has to approve of the change procedures or the more invasive procedure or the type of analysis that's going to reveal more than what it's currently revealing. They just give notice. And we can see from the evolution of this statute that the government's interest in collecting DNA is significant. And they're looking always to expand their right to collect DNA. And the Fourth Amendment just doesn't allow it, particularly where someone has not been convicted, is not on supervised release, isn't in the community, and we don't have the interest that we have in Shubalek. This would be an unreasonable extension of Shubelek because the government's concerns there are far greater and the privacy rights are much more diminished than Mr. Mitchell. So it's a very different case. So I think consistent with Shubelek, the district court's ruling, and it extensively cites Shubelek, is correct. The analysis is correct. Shubelek does not permit this. It's not what the Supreme Court has said, and it's not what the Third Circuit has said. Thank you. Thank you. Ms. Irwin, rebuttal. Thank you, Your Honors. I'd like to start with this notion of identification in the government's interest in identifying a defendant ends once the parties in the room seem to be comfortable with who he is. There's no dispute in this case that Mr. Mitchell is who he is. He says he is. We believe him. The trial assistant believes him. But the government's interest in identification because of the nature of the system in the United States and the size of it, the interest in identification goes beyond that room. Which becomes investigation when it goes beyond that room. Does it not? I'm not saying, I don't know if that's a good or a bad thing. Maybe that's fine that it's for investigation. Well, I think that maybe that's an important interest. I think Schublek allows that. But as a primary purpose, we need to know who we have. It's not as simple as keeping Mr. Mitchell in the room next door. He's sent to a facility. He may be transferred elsewhere. And the marshals need to know where he is and who that person is that's being moved from place to place. So it's a systemic knowledge of his identification that we need to be sure we have a handle on. Because that's not what the statute is limited to. The statute doesn't say it's used only so we can track him in the system and make sure we know who he is. I realize that, Your Honor. But the perception seems to be that this is a ruse on the part of the government that we're not really interested in identifying the individual. We're very interested in identifying the individual as a primary interest. And once we have him, Mr. Mitchell's in our custody, we're responsible for him. We need to know where he is. Yeah, but on the same token, you have to concede that the primary reason is because you want to link him to other crimes. And I'm not saying that's bad. But you can't pretend that that's not something that is being pushed as the interest here. It's crime solving, isn't it? I'm not suggesting that we are disavowing that in any way. But I think we have to recognize that the primary purpose is identification. And that's what Shubelek recognized, that that's a legitimate government interest. Shubelek also recognized that there's legitimate government interest in crime solving. We're not trying to walk away from that. But I think the perception that's been left with the court is that since there's no dispute that in this case, that Mr. Mitchell is who he is, the government has no interest in identifying him. Once you get past that point, there's other information that you want to know about Mr. Mitchell. And that's true. You want to know what other crimes he's been connected to. And that's correct. And this court in Shubelek recognized those as also being legitimate. So I think they all fit together. But I just wanted to make clear that the court understands that this identification is not a ruse. It's not an effort to try to hide behind something because it's not. The other point I'd like to make is that Mr. Mitchell seems to be arguing that the intrusion is something more than what the district court found, that it's something more than minimal. There's no cross appeal here. We have to live with the fact, which the government agrees with, and perhaps the defendant doesn't, is that this is a minimal intrusion. And that's pretty much what we're left with in this case. The final point I'd like to make is that the defendant argued that because some of the interests that were found in Shubelek may not be as prominent here, that it somehow means the government has no valid interest, primary or secondary or tertiary, in collecting DNA. For example, rehabilitation. There's nothing in Shubelek or any of the cases that are on point with regard to DNA collection that set a criteria that must be met in order for the government's interest to be valid. That happened to be a prominent interest in Shubelek that it's not here really doesn't diminish any of the government's legitimate interests. And the only other point I'd like to make is with regard to jurisdiction, although I hesitate to go into that thicket, is just to remind the court that we did file a petition for mandamus as a fallback position should the court find that the collateral order, doctrine order does not apply. Thank you. Thank you. Counsel, the case was very well argued.  And we'll ask the clerk to recess, but we are going to stay for a few.